Before STATE INDUSTRIAL BOARD, Respondent.

JAMES STRUBLE, Respondent, *v.* VACUUM OIL COMPANY, Appellant.

Third Department, September 26, 1924.

Workmen's compensation — injury to eye — loss of vision — " 20/50 " loss of vision of right eye according to Snellen method — symbol " 20/50 " does not mean fraction of sight — " 20/50 " vision means fifteen per cent loss where only testimony relates to acuity of central vision.

Where it is agreed that the vision of the right eye of a claimant according to the Snellen method of expression is " 20/50 " and the only testimony given relates wholly to the subject of acuity of central vision, the symbol " 20/50 " does not mean a fraction of the sight, but means fifteen per cent loss of vision and, therefore, an award on the basis of sixty per cent loss of vision must be reversed.

APPEAL by the defendant, Vacuum Oil Company, from an award of the State Industrial Board, made on the 21st day of July, 1923.

*Bowman & Van Schaick* [*George S. Van Schaick* of counsel], for the appellant.

*Carl Sherman, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

KELLOGG, J.:

The claimant suffers from a corneal scar which covers two-thirds of the pupillary area of his right eye. There results a defect of vision which eyeglasses will not correct. Experts are agreed that the vision of the right eye, according to the Snellen method of expression, is " 20/50." Dr. Snell asserts that this symbol means that claimant first clearly sees at twenty feet an object which he should clearly see at fifty feet. Dr. Conboy asserts that, while the symbol has this meaning, such is not its only significance. He maintains that " 20/50 " is a common fraction; that it expresses the fractional vision now remaining in claimant's right eye; that the claimant's eye is two-fifths normal or sixty per cent blind.

According to the Snellen method the symbol " 20/20 " signifies perfect vision. Other Snellen expressions are " 20/30," " 20/40," " 20/50," " 20/60 " and so on until " 20/220 " is reached. Each expression means that the patient first sees at the number of feet given in the apparent numerator what he should see at the number of feet given in the apparent denominator. Always the apparent numerator remains the same; always the apparent denominators change. A fraction is defined as follows: " A part, or a number of aliquot parts, of unity. Unity is regarded as divided into equal parts, and one or more of these parts is taken to constitute the fraction. The number of parts into which the unit is divided is termed the denominator, and the number of these parts taken the numerator." (Century Dict.) The question, therefore, whether the Snellen symbols are expressive of fractional sight, depends upon the question whether the denominators therein subdivide the unit of perfect vision.

The numerators in the symbols, as well as the denominators, primarily indicate distance in numbers of feet. Obviously twenty feet are two-thirds of thirty feet and one-half of forty feet. Therefore, the employment of such symbols as " 20/30 " and " 20/40 " in the capacity of fractions to express comparisons in distance would produce correct results. The symbols may be correctly employed as fractions to a greater extent. The size of the letter which normally should first be seen at twenty feet is .891 centimeters. This standard letter at the distance given subtends a visual angle of five minutes. The size of a letter, subtending the same angle, seen by a normal eye at thirty feet, is 1.336; at forty

Third Department, September, 1924.                    [Vol. 210

feet is 1.782; at fifty feet is 2.227; at sixty feet is 2.673; at two hundred and twenty feet is 9.801. Each time the distance is advanced ten feet, or half the standard distance, the object is increased in size over the size of the standard object one-half. The ratio of increase in distance then is precisely the same as the ratio of increase in size of object. But that is not all. The thirty-foot object placed at twenty feet will subtend an angle of seven and one-half minutes. Thus the angle is expanded over the standard angle one-half. So the forty-foot object, at twenty feet, will again add one-half to the angle, as will the fifty-foot object, the sixty-foot object and so on. Thus the ratio of increase in angle, as well as the ratio of increase in object, precisely corresponds with the ratio of increase in distance. Accordingly, if the apparent numerators in the Snellen symbols be regarded as representing the standard object or the standard visual angle, and the denominators as representing the patient's object or angle, the former will be found to bear that relation to the latter, which the symbols, treated as fractions, would indicate. Thus in " 20/30 " the standard object or angle is two-thirds the patient's object or angle; in " 20/40 " it is one-half; in " 20/50 " it is two-fifths. It will be seen, however, that the denominators, in the various symbols, when used as fractions, denote units, such as objects and angles, which are never the same. The denominators, then, cannot subdivide the constant unit of perfect sight or the constant unit of blindness. Consequently, the symbols cannot be fractions of sight or blindness.

Dr. Conboy's theory that the Snellen symbols express fractional sight necessarily depends upon the assumption that normal vision is to a patient's vision as the standard visual angle is to the patient's visual angle. The assumption has no support in testimony or in reason. Manifestly it cannot be that a " 20/40 " patient, whose visual angle is twice the standard angle, is half blind, while a " 20/60 " patient, whose angle is three times the standard, is only two-thirds blind. If the former, having a visual angle of ten minutes, as contrasted with the five-minute standard, has progressed toward blindness one-half the total distance, then logically the latter, who has progressed a further distance of five minutes to fifteen minutes, has then arrived at the goal of total blindness. It is apparent that the assumption leads to absurdities which contradict and disprove the theory.

The reasoning of Dr. Snell is far more satisfactory. He asserts, and it is undisputed, that " 20/220 " is a symbol expressing total blindness. Neither is it disputed that it represents a visual angle of fifty-five minutes. The normal visual angle, as we have seen, is five minutes. The visual angle of any patient, therefore, who

still sees, though his visual acuity be dulled, must be more than five minutes and less than fifty-five one-hundredths minutes. The angles of partial blindness, therefore, have a range of fifty minutes. Dr. Snell asserts that the correct measure of a patient's imperfect vision rests in a comparison of a figure, determined by the difference in the figures representing the patient's visual angle and the standard angle, with the figure which represents the total range of defective sight. Thus the claimant in this case has a " 20 /50 " vision. His visual angle is twelve and one-half minutes or seven and one-half minutes over standard. Seven and one-half minutes is fifteen per cent of fifty minutes. It is for this reason that Dr. Snell pronounces the claimant's loss of vision to be fifteen per cent. While we do not hold that the claimant's loss must be thus limited, we consider that the record, as it now stands, leads to no other satisfactory conclusion. It must be remembered that the testimony given related wholly to the subject of acuity of central vision. No other subject was considered. Moreover, the only testimony in the case to the effect that the Snellen symbols constituted fractions of the unit of sight was a dogmatic assertion which begged the question. We conclude that the Industrial Board were, therefore, in error when upon the proof given they found that the claimant had lost sixty per cent of the vision of his right eye.

The award should be reversed and the claim remitted, with costs against the Industrial Board to abide the event.

All concur.

Award reversed and matter remitted to the State Industrial Board, with costs against the said Board to abide the event.